338 So.2d 363 (1976)
GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff-Appellant,
v.
Louis J. BOUTTE, Defendant-Appellee.
No. 5614.
Court of Appeal of Louisiana, Third Circuit.
September 29, 1976.
Dissenting Opinion October 8, 1976.
Rehearing Denied November 4, 1976.
Piccione & Piccione by Peter C. Piccione, Jr., Lafayette, for plaintiff-appellant.
Armentor & Wattigny by Gerald B. Wattigny, New Iberia, for defendant-appellee.
Before HOOD, MILLER and WATSON, JJ.
MILLER, Judge.
Plaintiff General Motors Acceptance Corporation appeals the judgment refusing to grant it a deficiency judgment against defendant Louis J. Boutte amounting to $2,641.62 plus interest. The deficiency judgment was denied on finding the evidence established that the automobile seized and sold for $134 at GMAC's foreclosure was not properly appraised as required by LSA-R.S. 13-4364 et seq. and C.C. arts. 2771 et seq. We affirm.
On October 12, 1973, Boutte bought a used 1970 Chevrolet Monte Carlo and signed a note for the sum of $2,796.20 payable in thirty installments at GMAC's offices. When the outstanding balance was reduced to $2,122.88, he defaulted. Under executory process GMAC had the car seized and on September 11, 1974 it sold at sheriff's sale for the price of $134.
Boutte failed to appoint an appraiser and the Monte Carlo was appraised for $200 and bought in by GMAC for $134. At the time of the sheriff's sale, the average retail value of a Monte Carlo in average condition was in the $1,500 to $2,000 range.
The evidence supports the trial court's conclusion that the appraisal did not meet the standards required by the cited statutes and codal articles. The repossession report in evidence as Exhibit D-1 described the condition of the Monte Carlo as a good body, good grill, good top, but with a scratch on the hood. Tr. 117.
In answer to interrogatories GMAC stated that at the time of seizure, the car had been abandoned for approximately one year; it had no rear end or differential, no battery, paint on the car was peeling and spotted, upholstery was torn and mildewed, one window on the car was broken, etc.
At trial, GMAC's witnesses acknowledged this description did not remotely fit Boutte's car. Although the car had been run into a ditch on one occasion, the collision *364 insurance which GMAC required Boutte to purchase covered the loss and GMAC's dealer who originally sold the car made the repairs.
Both appraisers thought the car was inoperable when they appraised the Monte Carlo. They were wrong and the trial court specifically so held. Within eight days after the sheriff's sale, a battery was installed and the car was sold to a wholesale car buyer for the price of $400. So far as the record indicates only a few dollars, if any, were spent for the battery and one or two other minor repairs made before the car was delivered to the wholesale buyer. The wholesale buyer in turn spent some $600 on the car and sold it for $1,495. Tr. 96.
Boutte introduced evidence at Tr. 141,2 indicating that except for a weak battery the car was in good shape when it was seized. This supports the trial court's conclusion.
Appellant failed to establish manifest error in the trial court determination that Boutte successfully carried his burden of proof. Boutte established the appraisers did not substantially comply with the law set forth in LSA-R.S. 13:4365 so as to make "a true and just appraisement of" the Monte Carlo. See Ford Motor Credit Company v. Blackwell, 295 So.2d 522 (La.App. 4 Cir. 1974).
The trial court judgment is affirmed at appellant's costs.
Affirmed.
HOOD, J., dissents and assigns written reasons.
HOOD, Judge (dissenting).
I cannot agree with the conclusions reached by my colleagues. The foreclosure proceedings were conducted in strict compliance with the law, the property was sold subject to appraisement, I think the appraisal was true and just, and no fraud or error was alleged or proved. In my opinion, plaintiff is entitled to the deficiency judgment which it seeks.
The Boutte automobile was appraised by two disinterested, competent and experienced appraisers immediately before the foreclosure sale. Although one appraiser, Reuben Bienvenu, was a field representative of plaintiff and was appointed as an appraiser by plaintiff, the record shows that neither he nor plaintiff had any interest in foreclosing on defendant's car, that GMAC was looking solely to the endorser, Evangeline Auto Company, Inc., for payment of the note, and that the foreclosure suit and this action were instituted merely to accommodate the endorser. There is nothing in the record which suggests that Reuben Bienvenu conspired against defendant, that he was in bad faith, or that he neglected to inspect or to properly value the automobile.
The other appraiser, Rodney Bienvenu, was appointed by the sheriff after the defendant failed to appear and appoint an appraiser, all as required by LSA-R.S. 13:4364. This appraiser was an automobile dealer, who had no connection at all with plaintiff or with Evangeline Auto Company. He has had extensive experience in valuing automobiles. He inspected the car involved here. Neither plaintiff nor Evangeline Auto had anything to do with the appointment of the second appraiser, and there is nothing in the record to indicate that he or the sheriff acted fraudulently, or that Bienvenu failed to discharge any part of his duties, or that he was incompetent, negligent or insincere in any respect.
Both of the appraisers testified at the trial. Reuben Bienvenu testified that when he appraised the car it was inoperable, there was no battery or air cleaner in it, the wheel covers were missing, its tires were poor and mismatched, the interior was poor, a glass was broken, and "the car needed attention all over". He stated that he gave the car a "fair appraisal," that he appraised it at what he thought it was worth "due to the shape the car was in," that he considered the NADA book value, and that he concluded that the automobile was worth only $200.00. Rodney Bienvenu appraised many cars, and for that reason he was unable to recall the appearance of this particular automobile. He testified, however, that he inspects every car he appraises, and *365 that he values each car at the maximum amount for which he feels he could sell it. He stated that in this case he obviously felt that the car could be sold only for salvage.
Defendant Boutte did not allege fraud or error on the part of anyone, and no evidence of any kind was introduced to show fraud or error on the part of plaintiff, Evangeline Auto, the sheriff, the appraisers, or anyone else. Defendant nevertheless argues on this appeal that "through error or fraud" his automobile was grossly under-valued.
Since the evidence shows, without contradiction, that an appraisal was made by competent appraisers and that the car was inspected by them at that time it was valued, I think the failure of defendant to allege or to prove fraud or error is fatal to the position he takes in this case. It disturbs me to think that a creditor who uses executory process to enforce payment of his claim, and who in good faith has the mortgaged property appraised by two competent, disinterested appraisers, one of whom was appointed by the sheriff without even consulting with the creditor, may later be deprived of a deficiency judgment solely on the ground that the purchaser at the foreclosure sale later re-sold the property for slightly more than the amount of the appraisal. If the majority opinion stands, it seems to me that hereafter no creditor who hopes later to obtain a deficiency judgment will be able to run the risk of using executory process initially to enforce his claim. It will deprive the creditor, unjustly I think, of the deficiency judgment to which he is entitled solely because of a technical defect in procedure over which the creditor had no control. It will enable the debtor in many cases to defraud his creditor by merely purchasing the property after the foreclosure sale at a price slightly higher than the appraised value, and thus avoid a deficiency judgment.
In the majority opinion my colleagues make no finding as to the actual value of the car at the time of the foreclosure sale. They state that the average retail value of such an automobile was "in the $1500 to $2000 range," inferring that the car should have been valued within that range. They have overlooked the fact, however, that the values they suggest apply to automobiles which are at least in average condition, whereas the Boutte automobile was in a dilapidated, wrecked condition and was inoperable at the time of the seizure.
The majority does not mention the findings of the trial judge that the car was "in pretty bad shape," that the appraisers were "competent and knowledgeable," and that they "considered that the car was inoperable." Despite those findings, the trial judge nevertheless concluded that the car had a value of $400.00 at the time of the foreclosure sale, but he based that holding solely on the fact that the car was sold for $400.00 a few days after it was appraised. The trial judge acknowledged that a battery and an air cleaner had been installed in the car immediately before it was sold for $400.00, and he observed that these items cost the owner "no more than $36.00". His determination thus was that the car actually must have been worth $364.00 at the time it was appraised, since it was later sold for that amount plus the cost of the new battery and air cleaner. On that basis alone he concluded that the earlier valuation of $200.00, before the new parts were installed, did not constitute a just and true appraisal. He found no fraud or error, no failure to inspect the automobile, no lack of competency on the part of the appraisers, and no bad faith.
I cannot accept the finding of the trial judge, or that of my colleagues, that the appraisal of the car did not constitute a just and true appraisal, and that plaintiff thus is not entitled to a deficiency judgment.
Michael Bordelon, the owner or manager of Evangeline Auto Company, testified that the car was worth less than $200.00 when he acquired it, that it "didn't qualify for a retail sale," that the car wouldn't run and had to be towed in when it was seized, that the outward appearance of it alone, together with the deteriorated condition of the suspension and interior, was such that "the cost of those things would have been prohibitive *366 to get a reasonable amount for the car." He stated, "The front suspension the car was falling in front; it needed all of the new suspension in front; the interior was deplorable; the seats were in bad condition; the carpets, the paint was terrible; and, if I recall, the tires were either not there or they weren't worth anything if they were there." He testified that he was fortunate to get $400.00 for the car after installing some parts and getting the motor to run, and that he "would have taken four hundred from anybody".
L. P. Bunch, the used car dealer who purchased the automobile for $400.00, testified "I thought the car was worth $400.00, but after I got it I found out it wasn't." He said, "The motor blew up on it on the lot," that he spent over $600.00 to put "an upper control on it, bushings in it, . . . a new set of tires, . . . body work and paint job." It took him three months to make those repairs;, and he then sold the car at a price which allowed him to make "a couple of hundred dollars on the sale." There is no showing as to how much it would have cost a bidder who was not in the used car business to make those extensive repairs, and the record thus does not show that the car could have been sold to anyone else for that amount.
Plaintiff, in answer to interrogatories propounded to it, described the condition of the car at the time of the seizure as follows:
"On information and belief, the 1970 Monte Carlo automobile had been abandoned on the levee at Bayou Benoit, Louisiana, for approximately one (1) year and at the time of the seizure the said automobile had no rear-end or differential, no battery, paint on car was peeling and spotted, upholstery was torn and mildewed, one window on the car was broken, the hood was wrecked and damaged, all of which contributed to the fact that the automobile had to be towed to the storage lot."
Two witnesses, N. R. Bordelon and R. Michael Bordelon, responded to written interrogatories propounded to them as to the condition of the car, as follows:
"To the best of R. Michael Bordelon's recollection, said automobile was in badly wrecked condition having no rear-end or differential, no rear wheels, no battery, paint on the car was peeling and spotted, upholstery was torn and mildewed, at least one car window was broken, the hood was wrecked and damaged."
The majority brushes these answers aside with the statement that GMAC's witness acknowledged that this description "did not remotely fit Boutte's car." I do not interpret the testimony of the witnesses as supporting that conclusion of my colleagues. It is true that all of them said that there was a rear-end or differential on the car when it was towed in at the time of the seizure, but Mr. Bordelon explained that "it wouldn't be much of an operation to get one (a rear-end or differential) on there just to tow it in." When Bordelon was questioned about his answer to the above interrogatories, he said "I don't remember those exact words, but that sounds about right."
Mr. and Mrs. Boutte admit that the car was wrecked about two months before it was seized. They stated that they had it repaired by Evangeline Auto Company, but there is nothing in the record to support that statement. The evidence convinces me that the car was never repaired. The testimony shows, for instance, that Boutte discontinued making payments on his mortgage note about two months before the seizure, or about the time he admits that the car was wrecked. Other evidence establishes that the car was still wrecked and was inoperable at the time of the seizure.
The law is settled that a judicial sale, apparently valid on its face, is presumed to have been conducted in accordance with law, and one seeking to attack the sale bears the burden of proving the contrary. Stockman v. Money, Inc., 277 So.2d 504 (La.App. 1 Cir. 1973). I think the defendant in the instant suit, Boutte, has failed to meet that burden of proof.
In my opinion the holding of the trial judge and my colleagues that a valid appraisal was not made in the foreclosure proceeding is not justified, since defendant *367 did not allege or prove fraud or error on the part of anyone in connection with that proceeding. The majority erred, I believe, in holding that the appraisers did not substantially comply with the law, solely because the purchaser at the foreclosure sale later sold the car for a little more than the amount for which it was appraised. I also feel that the majority erred in its conclusion that the vehicle had a value of more than $200.00 at the time of the sale.
For these reasons, I respectfully dissent.